Moore, J.
This action, like the one just disposed of, the Bellaire Goblet Company v. The City of Findlay et al., is brought to enjoin the defendants from shutting off the gas supply from the plaintiff's manufactory.
In many of the facts the case is similar to the one named, and in some is to be distinguished from that.
The pleadings, especially the answer, are too voluminous to gather from them the various matters set up, but I will contend myself with a very brief statement of the facts that appear to be material and necessary for a proper disposition of the case.
The plaintiff is a corporation engaged in the manufacture of glassware, having its plant located in the city of Findlay. The city of Findlay is a municipal corporation with a Board of Gas Trustees composed of five persons.
Whether it is a city of the third or fourth grade, second class, is immaterial in this case.
The city of Findlay owns and controls by its duly constituted authorities a natural gas plant to supply its citizens with light and heat. That for such purpose it owns real estate, has leased gas lands, sunk wells, laid pipes, and done all acts necessary to fully operate such plant. That prior to the time *437 mentioned in the petition of the plaintiff, December 1, 1890, the city furnished gas to the plaintiff and other manufacturers at merely a nominal price — to the plaintiff for $100 per year, payable monthly. That at the date named the city raised the price of gas to the plaintiff, and also to the other manufacturers. That the amount required to be paid by the plaintiff 'after such time is $6,727.44 per year, and served notice on the plaintiff that unless paid in monthly installments, the first by December 26, 1890, the supply of gas would be shut off.
That prior to April, 1888, the “Wyoming Syndicate,” composed of E. T. Dunn, J. H. McConica, John W. Harper, W. B. Ely and Jos. Ramsey, jr., owned a large tract-of land in what is termed North Findlay, and desiring to sell lots, increase the value, etc., in other words create a “ boom,”. the parties named agreed with the plaintiff that if they would erect a glass manufactory they would furnish the gas free of cost for the term of five years ; the plaintiff was also to receive some $10,000 to $15,000 in money, a number of lots free of costs — other conditions existed in the contract which are not material. The gas was to be furnished from a well upon the Howard Addition, and other wells were to be drilled in if this was not sufficient.
The glass works was built as contracted, and gas furnished as contemplated, for a time. Other factories, to-wit: The Bellaire Goblet Company, the Model Flint Glass Company, and the Findlay Pot Company1 were attached to the same wells, and also to another called the Heck well belonging to the same syndicate — the Howard well not being of sufficient capacity to furnish all the gas required.
On December 14, 1888, on application of the Bellaire Goblet Company and also the plaintiff, the city pipe lines were attached to their manufactories. The amount of gas furnished in this way, however, is very indefinitely proved.
On May 17, 1889, the following proceedings were had by the Gas Trustees, as appears from the minutes in evidence:
*438 “ Mr. E. T. Dunn offered the following proposition : That they would deed to the city the Harper and Howard wells and the end of the lots on which they are situated, together with one and five eighths miles of four inch pipe, provided the city will furnish sufficient gas to operate the Dalzell Glass Works, Model Flint Glass Works, Findlay Clay Pot Company, and the Bellaire Goblet Works, for $250 per annum.”
May 21, 1889, moved by Mr. Gorby, seconded by Mr. Mills, that the following resolution be adopted :
Resolved — That the city supply the Pot Works as now constituted for the sum of $60 per year '; and the Dalzell Glass Works as now constituted for $100 per year, for five years, provided the city has sufficient supply of gas to meet their requirements, and provided that the Harper and Howard wells, together with the valve and pipe lines leading to the above works, are deeded to the city.
Yeas: Carrothers, Gorby, Hull, Mills, McManness. Carried.
On July 29, a deed was duly made and executed for the Howard wells, also including the pipe line leading from the wells, with right of way. The deed so made has as grantors, William Henry Davis, Jasper G. Hull; Mary J. Hull, Elijah T. Dunn and Martha J. Dunn.
This deed was delivered for record on August 13, 1889.
Jasper G. Hull, one of the grantors in the deed, had an interest in and was one of the trustees of the syndicate. He was one of the Gas Trustees for the city.
W. A. Gorby was largely interested in and Secretary of the Bellaire Goblet Company, and was also one of the Gas Trustees for the City of Findlay.
The pressure of the Howard wells had largely diminished, and they were, soon after having been conveyed to the city, abandoned by taking up the pipe line that connected them with the factories. This was done by the Gas Trustees, and the pipes were used elsewhere. The city, through the action of its Gas Trustees, has continued to furnish gas to the plaintiff and the other factories named in the resolution of May 21st.
*439 The gas furnished the plaintiff by the city is of as much value, or more, than was sought to be charged for it by the action of the Gas Trustees to take effect December 1, 1890.
I. have now stated all the facts necessary to raise the question which distinguishes this case from that of the Bellaire Goblet Company v. The City of Findlay, disposed of by Judge Seney.
1. Is the City of Findlay bound by the contract made by the Gas Trustees with E. T. Dunn et al., under which the Howard wells were conveyed to the city in consideration that the plaintiff and others would be furnished gas to supply their manufactories for the term of five years ?
2. If not bound under the contract has it, the city, so ratified such contract as to be estopped from denying its liability under it, and the right of the plaintiff from having it enforced?
We are of opinion that both these propositions are to be answered in the negative.
Municipal corporations possess, in their public capacity, such powers only as are expressly granted by statute, and such as may be implied as essential to carry into effect those which are expressly granted.
These powers must be exercised by the body appointed by statute, and usually by the council.
If the city is to be bound by the contract under consideration, it is because of the acts of the Gas Trustees.
Section 2486 Rev. Stat. provides that the council of any city or village shall have power, whenever it may be deemed expedient and for the public good, to erect gas works at the expense of the corporation, or to purchase any gas works already erected therein. This and section 2489 are to be construed together.
The last named section provides that the Board of Gas Trustees may construct gas works, extend gas pipes, manufacture and sell gas and coke, collect gas bills and other.moneys due for gas and other material sold by it, manage ; construct and control gas works ; prescribe by by-laws the price of gas *440 and coke under such rules and regulations as by ordinance the council may adopt; and to carry into effect the provisions of this section, they may also purchase' material, employ laborers, appoint officers, purchase or lease the necessary real estate and erect buildings thereon. This section prescribes and limits the powers and duties of the Gas Trustees. In the lease and purchase of real estate they are limited to such as is for the erection of the buildings necessary for the purpose contemplated. The powers conferred cannot supersede or take the place of those to be exercised by the council as granted- by section 2486. The Board of Gas Trustees are merely an arm of, or rather the agents of the council, with the-right to do simply what is granted under section 2489.
No such power or right as sought to be enforced by the plaintiff can be exercised by the Gas Trustees under section 2489. If such contract could be made, council alone by its act would have to do it, or ratify it. That could only be done, in order to make it binding, by compliance with the provisions of section 1693, which, with other matters, incites that no contract, agreement or obligation shall be entered into except by an ordinance or resolution of the council, nor any appropriation of money for any purpose be made except by an ordinance ; also that the power or authority to make a contract, agreement or obligation to bind the corporation, or to make an appropriation, shall not be delegated; and every contract, agreement or obligation, and every appropriation of money made contrary to the provisions of this section, shall be void as against the corporation.
The contract under which the plaintiff claims, was never entered into by any ordinance or resolution of the city council, nor was it ever ratified by such act, nor was the price of gas to be furnished fixed under any rules or regulations prescribed 'by any ordinance of the city council.
The contract was an important one. Under it the city of Findlay would be bound to furnish gas to the plaintiff and the other parties named in it, for a period of five years at a merely *441 nominal price. The gas thus to be furishéd is worth many thousand dollars per year. The contract created a heavy burden upon the tax-payers, and that burden is imposed without the affirmative act of the council either creating or accepting it. Mr. Gorby, secretary of the Bellaire Goblet Company and one of the Gas Trustees, in his "testimony says, in speaking of the Howard wells, “ In fact, I knew there was not sufficient gas to run all those factories at the time.” And in answer to the further question — “ How many factories would those two wells alone run,” said “ they would easily run either ours or that of Dalzell Bros.”
It is clear to us that the Gas Trustees were contracting to furnish gas to these manufactories very largely in excess of the amount produced by the Howard wells — and to continue to do so for the period of five years. This could not be done under any legislative power granted them.
As we have already stated, the council of the city never entered into, approved or ratified such contract. The query might arise whether the council could bind the city, as it is claimed in this case tha it is obligated. That, however, is not before us.
The claim is made that the city is bound because it has accepted the deed from the syndicate, and made use of the gas-pipe to the extent of having taken it up and removed it. As we have already undertaken to show, the city cannot be bound by the contract of the Gas Trustees made upon its part, but if it is to be bound at all, it must be by resolution or ordinance of the city council.. It could hardly be said that the Gas Trustees, while not authorized to make the contract, would, however, do so, and then, in order to bind the city, accept some rights under the contract, and thus validate what was invalid. It appears to us quite clear that such acts under a contract as would bind the city, must be exercised by the body authorized to make the contract. The city council did not by any act aceept any deed for the property, nor did it by any act exercise *442 control of or authorize the use of the property sought to be purchased by the Gas Trustees.
There may have been a liability created against some one for this gas pipe that was sought to be conveyed to the city. That we are not to determine in this case. We are clear, however, that under the proof offered the city is not to be held or estopped from denying its liability because of any claimed ratification of the contract on its part.
This contract should not be enforced for another reason. We have seen that Jaspar G. Hull was interested in and one of the trustees of the syndicate owning the Howard wells, and was also one of the Gas Trustees acting for the city of Findlay, and that W. A. Gorby was interested in and secretary of the Bellaire Goblet Company, and also one of the Gas Trustees acting for the city of Findlay. It is true that Mr. Gorby bad-no interest in plaintiff's company; he did, however, have an interest in a company that was largely benefited in the original contract for free gas, and interested in having gas furnished to manufacturers at low or nominal rates, which was resolved to be done at the same meeting of the Gas Trustees, to-wit: May 21, 1889. The action of the Gas Trustees, of which Hull was one, relieved himself and his associates of the burden of supplying free gas to the various manufacturing establishments under the contract of April 7, 1888, and in view of. the condition of the Howard wells, was evidently of great advantage to them. While this was done it added the burden to the city of Findlay. The contract with the Gas Trustees not only assumed to furnish gas for a nominal consideration during the unexpired time that the syndicate had contracted to supply it, which was less than four years, — but for five years from the date of the contract with the Gas Trustees, — being largely to the advantage of the manufacturers. While it may be said that Hull or Gorby, or both of them, were but a minority in the Board of Gas Trustees, and a majority outside of them could act, still the city has a right to a full board qualified to act, and the court cannot shut its eyes to the fact that one *443 or more of the members interested in its proceedings may influence the Board to bring about results that otherwise may have been different. The contract made under which the plaintiff claims and seeks to obtain relief was an entirety. The plaintiff cannot eat of the forbidden fruit thus acquired. Hull, or Hull and Gorby cannot serve two masters when good faith requires service to but one. They should have acted in the utmost good faith as trustees of the city. It is not sufficient that they claim they did so. The obligations imposed upon the city were onerous, and the policy of the law is to shut the door against temptation where the duties of the trust are to be exercised. No higher duty for the city could be imposed than the one assumed by these trustees. It was an official trust. They assumed the control of large interests. Under the circumstances the. position assumed became a public trust, and it might be further added that the law requires it should have been faithfully and honestly executed. It has beedsaid that in such cases the acts of the trustees should not be upheld even if there is no fraud, but because there may be fraud. However innocent, they are poisonous in their consequences. The rule is enforced to guard from the uncertainty and hazard of abuses. This appears to be the legislative policy of the state in so far as the legislature can anticipate the conduct of public officers. I refer to sections 6969 and 6676, Revised Statutes.
In the case of Doll v. The State, 45 Ohio St. 445, Judge WiLiJÁars used this language: “To permit those holding offices of trust or profit to become interested in contracts for the purchase of property for the use of the' state, county or municipality, of which they are officers, might encourage favoritism and fraudulent combinations, not- easily detected, and thus make such officers charged with the duty of protecting those whose interests are confided to them, instruments of harm.” In the syllabus of the case the court declares as the law : “To become so interested in the contract, it is not neces *444 sary that he make profits on the same. But it is sufficient, if, while acting as such officer, he sell the property to the city for its use, or is personally interested in the proceeds of the contract of sale, and receives the same as part thereof, or has some pecuniary interest or share in the contract-/”
Burket & Burket and J. A. Bope, for plaintiff.
W. F. Duncan, „City Solicitor, and Geo. F. Pendleton, for defendant.
Gorby and Hull were interested in this contract. They each, especially the latter, occupied relations inconsistent with their duties to the city. To uphold contracts so made might be far reaching in their consequences. We are assured that already a heavy indebtedness on the part of the city has been incurred. Grievous burdens are to be borne by the taxpayers. What was supposed would be, and intended to be a source of profit to the city, has become a means of depleting its revenues.
The contract entered into by the Gas Trustees can not be sustained. The relief prayed for by the plaintiffs will be denied, and the petition dismissed at the costs of the plaintiffs, and the cause remanded to the court of common pleas for execution for costs.
The same judgment will be entered in The Model Flint Glass Co. v. The City of Findlay et al.
Seney and Beer, JJ., concur.